# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | No. 1:15-cr-00159 |
| v. | : | (Judge Kane) |
| | : | |
| FLOYD A. BENKO, | : | |
|     Defendant | : | |

## MEMORANDUM

Before the Court is Defendant Floyd Benko's motion to exclude the expert testimony of Dr. Keri Donaldson pursuant Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). The Court convened a hearing on the motion on August 17, 2016. For the reasons that follow, the Court will deny Defendant's motion.

## I.   BACKGROUND

Dr. Donaldson is an assistant professor of pathology at Penn State Hershey Medical Center, a post he has held since 2011. (Doc. No. 38-1.) He holds numerous degrees and certifications and is licensed by the Pennsylvania Board of Medical Examiners. (Id. at 5-6.) In addition, Dr. Donaldson has served as a reviewer for a number of academic publications and has authored or co-authored eight peer-reviewed articles of his own. (Id. at 6-9.) A number of these articles are directly relevant to genetic testing, including two articles Dr. Donaldson co-authored with Defendant. (Id. at 9.) In his motion and supporting brief, Defendant does not argue that Dr. Donaldson is not qualified to render expert opinions in the field of molecular biology. (See Doc. No. 31 at 3.) At the hearing, Defendant did challenge Dr. Donaldson's qualification to testify as an expert in the field of molecular biology, arguing that Dr. Donaldon held little formal training in the discipline. At both the hearing and in his motion, Defendant has argued that Dr.

Donaldson's specific opinion in this case – that Defendant's alleged failure to utilize the NanoDrop 2000 could have resulted in discordant test results – is inadmissible. (Id.)

The Government intends to call Dr. Donaldson to testify about the procedures involved in performing the three types of assays relevant to the indictment. (Doc. No. 38 at 5-6.) Dr. Donaldson will testify that, if Defendant followed the Standard Operating Procedures (SOPs) in every respect except for use of the NanoDrop, his failure to use the NanoDrop "is the cause" of the nearly 50% discordance rate between Defendant's tests and those performed by outside labs. (Id. at 5.) The Government has stressed that Dr. Donaldson's opinion "is not absolute," and that Dr. Donaldson will only testify that Defendant's failure to use the NanoDrop "could account for the discordant results." (Id. at 6) (emphasis in original).

## II.     LEGAL STANDARD

The Supreme Court has held that the trial court has "a special obligation" to ensure that any and all expert testimony is not only relevant but reliable. Kumho Tire Co., Ltd., v. Carmichael, 526 U.S. 137, 147 (1999) (quoting Daubert, 509 U.S. at 589). This special obligation has been likened to a "gatekeeping role" for the trial judge. Daubert, 509 U.S. at 597. Accordingly, the admission of scientific, technical, or other specialized knowledge is within the discretion of the district court. General Elec. Co. v. Joiner, 522 U.S. 136, 146-47 (1997). This inquiry is controlled by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. As the United States Court of Appeals for the Third Circuit has explained, these requirements represent the "trilogy of restrictions on expert testimony: qualification, reliability and fit." Calhoun v. Yamaha Motor Corp. U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (citing Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)).

When considering the qualification requirement, a Court must discern whether a proffered witness has specialized expertise in a given field. Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008). In undertaking this inquiry, no particular background or credentials are necessary to establish specialized knowledge, described as "a broad range of knowledge, skills, and training qualify an expert." In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994).

As for the reliability requirement, the Supreme Court has held that the gatekeeping function requires the trial court to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S at 152. The familiar Daubert factors inform a court's reliability analysis; courts may ask:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Calhoun, 350 F.3d at 321 (citing Paoli, 35 F.3d at 742 n.8).

The final requirement is fit, which means "the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact." Id. (quoting Schneider, 320 F.3d at 405).

This inquiry goes primarily to relevance because expert opinion which does not relate to a disputed issue is not relevant and cannot assist the trier of fact as required by Rule 702. Daubert, 509 U.S. at 591-92.

Ultimately, a court may find that an otherwise admissible expert opinion should be excluded under Federal Rule of Evidence 403 because its probative value is substantially outweighed by the potential danger of unfair prejudice, confusion, or misleading of the jury. See Paoli, 35 F.3d at 746-47. Therefore, the Court must have considerable discretion in deciding how to evaluate expert testimony and in determining whether that testimony is reliable and relevant. Kumho Tire Co., 526 U.S. at 152.

### III. DISCUSSION

To decide Defendant's Daubert challenge, the Court considers the triad of factors announced by the Third Circuit: qualifications, fit, and reliability. Calhoun v. Yamaha Motor Corp. U.S.A., 350 F.3d 316, 321 (3d Cir. 2003) (citing Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). The Court turns to Defendant's arguments as to each factor.

Defendant did not challenge Dr. Donaldson's qualifications in his motion or brief, instead he raised this objection for the first time at the Daubert hearing that convened August 17, 2016. (See Doc. No. 31.) Defendant argued at the hearing that while Dr. Donaldson may qualify as an expert in other fields, he was never a resident or a fellow in molecular biology specifically. Testimony revealed that Dr. Donaldson has supervised molecular biology laboratories and has given lectures to resident physicians in the subject. Dr. Donaldson's published works include a number of papers squarely concerned with the field of molecular biology. In addition, Dr. Donaldson is responsible for inspecting molecular biology laboratories for an accrediting body. Based on Dr. Donaldson's years of experience, training, and education, the Court finds that he is

qualified to give expert opinions about molecular biology and in particular diagnostic testing methodology.

Defendant never explicitly challenged the "fit" of Dr. Donaldson's proposed expert opinion, and the Court finds that this factor supports permitting Dr. Donaldson's proposed testimony. "Fit" is determined in large part by the proposed opinion's helpfulness to the finder of fact. Here, Dr. Donaldson's proposed opinion would be helpful to the jury when it determines whether or not the use of a spectrophotometer in general or the NanoDrop 2000 in particular was a necessary step in performing the assays that Defendant conducted, as the necessity of the device in such specialized testing is "beyond the ken" of the average juror, and is critical to the Government's case. See United States v. Johnson, 2016 WL 308585, at *2 (3d Cir. January 26, 2016).

The outcome of Defendant's motion turns on whether or not Dr. Donaldson's proposed opinion – that failure to use the NanoDrop could have caused the discordant results – is sufficiently reliable. In making this determination, the Court may consider, for example, the testability of Dr. Donaldson's hypothesis, whether it has been subjected to peer review, whether there is a high error rate, the existence of "standards controlling the technique's operation," and whether Dr. Donaldson's premise has been "generally accepted" in the scientific community. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999).

On balance, the Court finds the opinion sufficiently reliable to be admissible. Defendant has objected to the reliability of the proposed opinion, arguing that the necessity of using the NanoDrop 2000 in performing these assays has not been generally accepted within the scientific community. Despite Defendant's objections, the Court finds that the opinion bears sufficient indicia of reliability to be admissible at trial. Dr. Donaldson's testimony, together with the

testimony of Dr. Wisotzksey, reveals that quantification and qualification is a critical step of performing molecular assays of the types at issue here.  This testimony is reinforced by industry publications and at least one peer-reviewed journal article that the Government also introduced at the hearing.  It is also clear from the testimonies and from the publications that the use of a spectrophotometer is a generally accepted method of conducting qualification and quantification in these tests, including the NanoDrop 2000 brand name spectrophotometer at issue in the present prosecution.  Accordingly, the Court finds that Dr. Donaldson's proposed testimony – that Defendant's failure to use the NanoDrop 2000 could have resulted in the discordant tests – is sufficiently reliable to be admitted.  Accordingly, the Court will permit Dr. Donaldson to testify as an expert.

**IV.   CONCLUSION**

For the foregoing reasons, the Court will deny Defendant's <u>Daubert</u> motion. (Doc. No. 31.)  An order consistent with this memorandum follows.